# IN THE COURT OF APPEALS OF IOWA

No. 19-0727
Filed July 24, 2019

**IN THE INTEREST OF A.G.,**
**Minor Child,**

**J.G., Father,**
     Appellant,

**A.S., Mother,**
     Appellant.
_____


Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.


A mother and a father separately appeal the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**


Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Katie Eastvold, North Liberty, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant Attorney General, for appellee State.

Jessica L. Wiebrand, Cedar Rapids, attorney and guardian ad litem for minor child.


Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

A mother and a father separately appeal the termination of their parental rights to their child, A.G.[1]  The mother contends grounds for termination have not been proved by clear and convincing evidence, the State failed to make reasonable efforts to reunify her with the child, termination of her parental rights is not in the child's best interests, and the parent-child bond should preclude termination of parental rights.  The father contends he can provide the child with a safe home when he is released from prison.  Both parents ask for an additional six months to achieve reunification.  We find no reason to disturb the juvenile court's findings or conclusions, and we affirm on both appeals.

As background, these parents lost their parental rights to another child in December 2017.  In the order terminating their parental rights to A.G.'s sibling, L.G., the juvenile court noted:

> [The father] has four older children, none of whom are in his custody.  [The mother] has one older child who has resided with [maternal grand]parents for most of the child's life.  [The mother] and [the father]'s relationships with their older children have been negatively affected by parental drug use . . . .  [The mother] acknowledges using illegal substances off and on since age [eleven].  Her primary drug of choice has been methamphetamine.  [The father] also reports drug use beginning in early adolescence.  [The father] has used multiple substances, including marijuana, cocaine, LSD, mushrooms, methamphetamine and heroin.  [His] current primary drug of choice is heroin, which he occasionally combines with methamphetamine.

The juvenile court terminated their parental rights to L.G., finding:

> Neither [parent] ha[s] been able to establish any significant period of sobriety during the time since the child's removal.  They continue to be at significant risk of incarceration due to repeated criminal activity.

---

[1] The State filed a motion to dismiss the father's appeal for failure to comply with the rules of appellate procedure.  The supreme court denied the motion and transferred the case to this court.

An additional six months is very unlikely to result in the ability to safely return this child to the care of a parent.

The mother was in jail from December 2017 to April 2018 related to probation violations. The father began serving a ten-year prison term on drug charges in June 2018 with a tentative discharge date of December 2022.

A.G. was born in July 2018. Umbilical cord testing was positive for methamphetamine, which mirrors the circumstances of L.G. being born in June 2017 with an umbilical cord that tested positive for methamphetamine. Upon L.G.'s and A.G.'s births, the mother denied using drugs for many months. The mother has been diagnosed with bipolar disorder, anxiety, and major depressive disorder and is prescribed medication for those concerns.

A.G. was removed by temporary order and placed in foster care with the family who adopted A.G.'s sibling. A child-abuse assessment by the department of human services (DHS) was founded against the mother upon a determination there were illegal drugs present in the child's system. A.G. was adjudicated a child in need of assistance (CINA) on August 29.

As of October 22, the mother had yet to provide releases of information to DHS. Thus, DHS was not able to confirm the mother's reports of attending mental-health medication-management appointments, appointments with her probation officer, or substance-abuse treatment.

A dispositional hearing was held on October 30 at which time the mother conceded she was not in a position to assume custody of A.G. as she had been living with a person who was regularly using methamphetamine in the home. Although the mother denied any knowing use of methamphetamine since

December of 2017, she was aware that she has had multiple drug test results positive for methamphetamine and suggested the housemate may have mixed methamphetamine into food or drinks in the refrigerator, which the mother then consumed. The mother was seeking out alternative housing and reported actively participating in substance-abuse and mental-health treatment.

A December 2018 foster care review report noted the mother was consistently attending four, one-hour visits with A.G. per week. The report also noted the mother "continues to test positive for methamphetamine via [urinalysis] and patch testing." The father had been moved from the correctional facility in Anamosa, where he had been receiving one supervised visit per month with A.G., to Newton. The report stated, "Efforts will be made to reevaluate this and determine how visits can be resumed in Newton."

In January 2019, a report of probation violations was filed, asserting the mother had failed to report for random drug testing on numerous occasions between September 2018 and January 2019 and had failed to report for substance-abuse treatment since November 6, 2018, and was unsuccessfully discharged. She had not been employed since September 2018. A revocation hearing was scheduled for March 25, 2019.

On February 13, DHS submitted a report to the juvenile court that the father remained incarcerated and received one supervised visit per month with the child. The mother "was unsuccessfully discharged from treatment and continues to test positive for methamphetamine regularly." The report also stated that, contrary to the mother's claim, "she has not been seen [by the alleged mental-health provider] in several months and they report that she does not have a current prescription for

medication through them." The report to the court also noted a petition to terminate parental rights had been filed.

The child's guardian ad litem (GAL) submitted a report to the juvenile court, noting concern with the mother's lack of progress toward sobriety and her dishonesty with service providers, and recommending her visits be reduced to twice per week. The GAL also recommended visits with the father be suspended due to his being incarcerated two hours away and transportation for a visit took up much of a day for the young child.

A CINA review hearing was held on February 27. The court found DHS had made reasonable efforts to reunify the family and listed the services provided. The court ordered the mother to cooperate with drug testing, limited the father's visits to one time per month,[2] and changed the permanency goal to termination of parental rights and adoption.

On March 4, a second report of violations of the conditions of probation was filed, asserting the mother had failed to report to her probation officer since bonding out of jail on January 22 and had failed to provide urine for urinalysis.

On March 6, the mother filed an "objection to request for reduction of visits," in which she complained of past occasions where four, one-hour visits had not occurred. She acknowledged the time had been made up by offering extended visits on other occasions, but argued the State was not making reasonable efforts because she had four contacts per week on "only eight of [twenty-six] weeks" inventoried through the end of January.

---

[2] We note this is the same visitation the father had been receiving.

A termination of parental rights hearing was held on April 8. The mother testified she had recently re-engaged in substance-abuse treatment and was hoping to avoid revocation of her probation. The father testified he expected to be paroled soon. Both parents requested additional time to seek reunification.

On April 19, the juvenile court entered an order terminating both parents' parental rights pursuant to Iowa Code section 232.116(1)(g) and (h) (2019).

"On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). After reviewing the record in this case de novo, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we conclude grounds for termination exist under section 232.116(1)(h)—the State has proved by clear and convincing evidence the child is under the age of three, has been adjudicated CINA, has been out of the parents' care for at least six consecutive months, and cannot be returned to either parent at the present time.

The mother asserts the child could be returned to her at present but the record clearly establishes otherwise. As noted by the juvenile court, the mother "was incarcerated at least twice during the course of the current case, and her probation officer testified that she and the State are recommending that she be sent to prison at her probation revocation hearing scheduled for May 2019." She has not resolved the long-standing concerns about her substance abuse or mental health and has unresolved criminal issues. The mother has made little progress toward sobriety or stability in over two years of services.

In the alternative, the mother asserts she should be granted an additional six months to seek reunification. She claims the State failed to make reasonable

reunification efforts, termination of her parental rights is not in the child's best interests, and her bond with the child should preclude termination.

The father, for his part, argues that upon his release from prison he can provide a stable home for the child. He argues, "The child has never been at risk of physical abuse at the hands of his father. He shows appropriate parenting skills and consistently attends visits."

We find no reason to disturb the juvenile court's ruling and we adopt its findings here:

> These parents lost their parental rights to another [child] in December 2017. [A.G.] was then born in July 2018. Virtually every concern that arose in the previous case still exists in the current one. It is clear from the record that the provision of services over two cases, and at least [two] years, has not substantially changed the situation for either parent. Neither parent was in any position to resume care of [A.G.] at the time of trial. They still struggle with substance abuse issues and criminal charges which cause them to be currently incarcerated or at threat of incarceration in the near future. [The father] has been incarcerated for [A.G.'s] entire life. [The father] believes that he will be paroled in the near future, but his release date was already delayed beyond what he initially believed it would be. Even once released, [the father] would need months of demonstrating that he can maintain his sobriety in the community before [A.G.] could potentially be placed with him. At trial both parents requested additional time in which to be able to resume care of their child.
>
> [The mother] complained about a lack of support from her probation officer and the providers in the DHS case. Nothing in her testimony demonstrated that any additional support would have changed the situation that she was in at the time of trial. She acknowledged at trial that she had never requested additional services or complained of the sufficiency of the services in court. [The mother] has not demonstrated the ability to provide [A.G.] a safe, sober drug-free home. She has lost one child to termination of parental rights and her parents have had guardianship of her oldest child for many years. [The mother] fails to take any responsibility for her own actions and choices and blames others for not providing enough assistance to her.

An extension of time is not warranted here, especially because the parents have been offered services over two years and "[v]irtually every concern that arose in the previous case still exists in the current one." *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). We conclude an additional time period would not correct the situation. *See D.W.*, 791 N.W.2d at 707 ("We do not gamble with the [child's] future by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (internal quotation marks and citation omitted)).

"Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the [child's] best interests*." In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). A.G. is young and has spent less than one week in the care of either parent. The child is in a stable pre-adoptive home with a sibling and is doing well in that setting. It is in the child's best interests to provide an opportunity for permanency. *See A.M.*, 843 N.W.2d at 113.

We acknowledge the child has some bond with the mother and father. While Iowa Code section 232.116(3)(c) allows the juvenile court to not terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child

relationship," we are not persuaded this is such a case. We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**